UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------ X
TAP MANUTENÇÃO E ENGENHARIA              :
BRASIL S.A.,                             :
                                         :
            Plaintiff / Counter-Defendant,:    14-CV-5364 (VEC)
                                         :
            -against-                    :    MEMORANDUM
                                         :    OPINION & ORDER
INTERNATIONAL AEROSPACE GROUP,           :
CORP.,                                   :
                                         :
            Defendant / Counter-Claimant.:
------------------------------------------------------------ X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/1/2015

VALERIE CAPRONI, United States District Judge:

This case arises from poor communication between companies. Plaintiff TAP Manutenção e Engenharia Brasil S.A. ("TAP") was repairing an aircraft that belonged to Defendant International Aerospace Group, Corp. ("IAG"). When the needed repairs were more extensive (and expensive) than the parties' initial contract contemplated, TAP sought to verify that IAG nonetheless wanted TAP to repair the aircraft. The parties dispute the nature and sufficiency of IAG's response to these requests. IAG has concededly paid less than it owes under the contract, but the parties cannot agree on how much more it owes. Moreover, again because of a lapse in communication, TAP possesses unserviceable aircraft parts that belong to IAG. Accordingly, TAP sued IAG for breach of contract (based on its nonpayment), and IAG counter-sued for conversion of the unreturned parts. Both parties have moved for summary judgment on their own claims, and TAP has also moved for summary judgment on IAG's claims. For the following reasons, TAP's motion is GRANTED IN PART and DENIED IN PART, and IAG's motion is DENIED.

## BACKGROUND[1]

TAP is an aircraft maintenance, repair, and overhaul company located in Brazil. Pl. 56.1 Opp. ¶ 2.[2] On April 16, 2012, TAP entered into a contract with IAG, a Florida corporation that sells aircraft and aircraft parts. Def. 56.1 Opp. ¶¶ 6-7. Pursuant to the contract, TAP would provide a C-check, an extensive regular maintenance check-up, on IAG's aircraft. *Id.* ¶ 8. As is relevant here, IAG engaged TAP to service a DC-10 owned by IAG Ventures, which had consigned the aircraft to IAG. *Id.* ¶¶ 9-10.

The parties do not dispute that TAP performed the basic services expressly contemplated by the contract. *Id.* ¶ 13. The fixed price for the C-check was $480,000. Am. Compl. Ex. 1 § 5.1. So far, IAG has paid TAP $400,000. Def. 56.1 Opp. ¶ 36. IAG accepted the return of the aircraft on August 6, 2012. *Id.* ¶ 31.

In addition to the work contemplated by the contract, TAP has performed additional work and provided additional materials ("over and above work"). *Id.* ¶¶ 14-15. Over and above work was contemplated by Section 5.4 of the contract, which provided:

> All additional work . . . which may be required, shall be quoted separately, on a Time & Material basis and will be submitted for prior written approval of [IAG]'s Representative.
>
> Any labor required to rectify defects found per each routine item and in excess of 50 man hours per non routine single item will be charged in a Time & Material basis, per rates bellow [sic] and paragraph 3, and after receiving [the IAG] Representative's written approval.

---

[1]  For the purposes of this Motion, the "Court must 'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Pandora Media, Inc. v. Am. Soc. of Composers, Authors and Publishers*, 785 F.3d 73, 77 (2d Cir. 2015) (*per curiam*) (quoting *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008)).

[2]  The parties' statements of undisputed material facts pursuant to Local Rule 56.1 are referred to as "[Party] 56.1" and their responses are "[Party] 56.1 Opp." The Court refers to the parties' briefs-in-chief, responses, and replies as "[Party] Mem.," "[Party] Opp.," and "[Party] Reply," respectively.

Am. Compl. Ex. 1 § 5.4. TAP invoiced and charged IAG for $1,042.980.08, representing the initial contract price for the C-check ($480,000) plus $562,980.08 for the time and materials associated with the over and above work. Def. 56.1 Opp. ¶ 35. Although TAP alleges that the invoiced amount reflects the appropriate contractual cost of the services rendered, IAG alleges that "TAP overcharged for some of its work." *Id.* ¶ 34.

The parties dispute the extent to which TAP complied with the contract's requirements before performing over and above work. *Id.* ¶¶ 15-30. Much of the dispute stems from the role of Juan Rojas, who was IAG's agent on the ground during the aircraft repair. *Id.* ¶¶ 16-17. IAG denies that Rojas had the actual or apparent authority to approve TAP's proposed additional services and materials. *Id.* ¶¶ 17, 23-25. Moreover, the parties cannot agree as to how frequently TAP obtained Rojas's written permission prior to performing over and above work. *Id.* ¶¶ 23-25. IAG contends that its representatives "specifically objected to Additional Work performed without approval," whereas TAP alleges that no "IAG representative ever objected to approving any Additional Work and Material after it had been commenced or performed by TAP." *Id.* ¶ 26.

The parties could have agreed as to the allocation of blame for the failure to solve this problem without bringing the matter to federal court. *Id.* ¶ 39-40. IAG maintains that it "is willing to pay [some indeterminate] amount because the amount claimed by TAP stems from overcharges and additional work that was never approved." *Id.* ¶ 43.

At the conclusion of the project, on October 9, 2012, Rojas sent an email to Maciel Albuquerque, a TAP point of contact, asking that TAP return certain aircraft parts from the DC-10 that were listed on a lengthy attachment. *Id.* ¶ 45, *see* Albuquerque Decl. Ex. 4. Albuquerque responded the next day, confirming which parts TAP had and asking Rojas to send him the address to which the parts should be shipped. *Id.* ¶ 46. Neither Rojas nor any other IAG

representative responded to Albuquerque's email. *Id.* ¶ 47.  TAP never returned the aircraft parts and continues to retain them.  Pl. 56.1 Opp. ¶¶ 6-7.  TAP avers that it "does not want the Aircraft Parts, and stands by ready, willing, and able to return the Aircraft Parts to IAG on request."  *Id.* ¶ 15.  IAG no longer seeks the parts, but wants TAP to pay the value that the parts would have had if they had been returned in 2012.

Accordingly, with the parties at an impasse, TAP initiated this lawsuit.  IAG asserted its counter-claims, seeking the value that the now-unwanted parts would have had in 2012.  The parties cross-moved for summary judgment.

## DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'"  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation marks omitted)).

Summary judgment is appropriate on a contract-based claim "where the language of the contract is unambiguous, and reasonable persons could not differ as to its meaning."  *Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.*, 84 F.3d 91, 98 (2d Cir. 1996) (quoting *Rothenberg v. Lincoln Farm Camp, Inc.,* 755 F.2d 1017, 1019 (2d Cir.1985) (internal quotation marks omitted)); *see also Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990) ("Only where the language is unambiguous may the district court construe it as a matter of law and grant summary judgment accordingly.").  Whether a contract is ambiguous is a question of law for the Court.  *See Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir.

2010); *see also Sutton v. E. River Sav. Bank*, 55 N.Y.2d 550, 554 (1982) ("[T]he threshold decision on whether a writing is ambiguous is the exclusive province of the court.").

A "contract is unambiguous if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion." *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (citation omitted). "[A] written agreement that is complete, clear and unambiguous on its face must be interpreted according to the plain meaning of its terms, without the aid of extrinsic evidence." *Law Debenture Trust*, 595 F.3d at 467 (citations, alteration, and internal quotation marks omitted). On the other hand, a contract is ambiguous if it is capable of "more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement . . . ." *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 53 (2d Cir. 2012) (quoting *World Trade Ctr. Props., LLC v. Hartford Fire Ins. Co.*, 345 F.3d 154, 184 (2d Cir. 2003) (internal quotation marks omitted)). "Where contractual language is ambiguous and subject to varying reasonable interpretations, intent becomes an issue of fact and summary judgment is inappropriate." *Thompson*, 896 F.2d at 721 (citing *Leberman v. John Blair & Co.*, 880 F.2d 1555, 1559 (2d Cir. 1989)).

### I. TAP Is Entitled to Partial Summary Judgment on Its Breach of Contract Claim

TAP moves for summary judgment on its breach of contract claim. "The essential elements of a cause of action to recover damages for breach of contract are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of its contractual obligations, and damages resulting from the breach." *El-Nahal v. FA Mgmt., Inc.*, 126 A.D.3d 667, 668 (2d Dep't 2015);[3] *see also Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d

---

[3] Section 16 of the contract specifically provides that it is governed by New York law.

131, 142 (2d Cir. 2011). For the purposes of TAP's motion, the Court takes all facts in the light most favorable to IAG and resolves all ambiguities in its favor. *Smith v. Cnty. of Suffolk*, 776 F.3d 114, 121 (2d Cir. 2015).

TAP and IAG agree that a contract exists and that TAP performed pursuant to the contract. *See* Def. Opp. at 3. The sole issue is "how much money IAG owes TAP, as IAG disputes whether the Additional Work performed on the Aircraft received prior written approval as is required under the Agreement." *Id.* Insofar as TAP performed *pursuant to the contract*, IAG would owe TAP for the work that was done, according to the schedule set forth in the contract.

### A. Work Pursuant to the Contract

TAP's motion does not differentiate between the various categories of work that TAP performed. As to the performance of the agreed-upon work under the contract, there is no genuine dispute that the contract's fixed price for a C-check was $480,000, that TAP performed the C-check, and that IAG's payment of only $400,000 has injured TAP to the tune of the unpaid $80,000. TAP is therefore entitled to a judgment, at a minimum, of $80,000.

### B. Over and Above Work

TAP's main source of alleged damages, however, is in "additional work." The parties have a number of factual and legal disputes regarding the "additional work" that TAP performed under the contract – foremost, however, is a disagreement about what the conditions precedent to TAP's performance of "additional work" would be. TAP argues that, once it had submitted a proposed schedule of over and above work to IAG, Section 5.4 of the parties' contract permitted it to perform the over and above work and to be paid for that work on a Time and Materials basis. Pl. Mem. at 10. IAG argues that Section 5.4 does not permit such work until TAP received a suitable prior authorization from IAG. Def. Opp. at 3.

TAP's proposed interpretation of the contract is not unambiguously clear; TAP is therefore not entitled to summary judgment on the basis that IAG's prior written authorization was not required. The contract's description of the written authorization that TAP was required to seek as "*prior* written approval" suggests that this approval is a precondition to the work. Am. Compl. Ex. 1 § 5.4 (emphasis added).[4] While TAP may have been permitted to perform over and above work without securing this approval, it is not unambiguously entitled to payment for work that IAG did not approve.[5]

### 1. Payment for Work Done Based on Rojas's Prior Written Approval

TAP argues that it obtained "prior written approval for most, if not all, of the Additional Work and Material before TAP performed or installed the Additional Work and Material." Pl. Mem. at 11. IAG contests the adequacy of approval from Rojas, who "did not have authority to approve without first conferring with Michael Mendez." Def. 56.1 Opp. ¶ 23. TAP argues that Rojas had "apparent authority," meaning that if, based on IAG's word or conduct, TAP reasonably believed that Rojas possessed authority to approve the additional work, then IAG would be bound by Rojas's approvals of the additional work. *See Indosuez Int'l Fin. B.V. v.*

---

[4] An earlier section of the contract provides that, in context of materials costing over $1,000 per line item, TAP had to obtain IAG's approval, and required IAG to "provide a response within 24 hours after notification from TAP . . . regarding the provision of materials valued in excess of the []$1,000.00 limit per line item set forth above. *After this period of time, if no response is provided by the [IAG] Representative, TAP . . . will consider the request as approved and will provide the materials.*" Am. Compl. Ex. 1 § 3(c) (emphasis added). TAP does not argue that this language unambiguously applies to Section 5.4, nor is it clear whether (or how frequently) TAP complied with the 24-hour waiting period in the context of materials associated with the additional work.

[5] TAP's theory is even less persuasive in the context of Section 5.4's second paragraph, which provides that certain categories of "additional work" "will be charged in [sic] a Time & Material basis . . . *after receiving [IAG's] Representative's written approval*." Am. Compl. Ex. 1 § 5.4 (emphasis added). TAP's argument that it was free to perform the work prior to approval, so long as it did not *charge* for the work until afterwards, could mean one of two things – either IAG's approval was irrelevant, in which case the contract would likely not have mentioned it so many times, or else IAG's approval was necessary to make any additional work that TAP performed compensable. Under the latter (more plausible) interpretation, TAP would not be entitled to be compensated just because it submitted a request to IAG.

*Nat'l Reserve Bank*, 98 N.Y.2d 238, 245-46 (2002); *Hallock v. State of N.Y.*, 64 N.Y.2d 224, 231 (1984); *see also F.D.I.C. v. Providence Coll.*, 115 F.3d 136, 140 (2d Cir. 1997) (same).

Two genuine issues of material fact preclude summary judgment, however. First, even if TAP officials believed that Rojas had the authority to bind IAG, there is a question of fact whether they so believed "'because of some misleading conduct on the part of the *principal*,'" in this case, IAG, rather than because of Rojas's own communications. *Stichting ter Behartiging van de Belangen van Oudaandeelhouders in het Kapitaal van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 56 (2d Cir. 2005) (quoting *Hallock*, 64 N.Y. 2d at 231) (emphasis in *Stichting*).[6] Second, IAG has – barely – adduced enough evidence to create a genuine question of fact whether IAG informed TAP that Rojas lacked authority to approve additional work without consulting Mendez (and whether TAP officials were aware of whether Rojas had contacted Mendez at any particular time). *See* Luna Dep. at 78-79. Accordingly, TAP is not entitled to summary judgment as to whether Rojas's prior approvals constituted prior authorization under the contract.[7]

### 2. Payment for Work Done that Received Rojas's *ex post* Approval

TAP next argues that Rojas approved certain additional work after it was performed, constituting an oral modification to the agreement. Pl. Mem. at 11-12. This argument suffers from the same deficiency as TAP's prior argument – there are questions as to whether Rojas had

---

[6] Albuquerque spells out the basis for TAP's belief that Rojas was IAG's official representative, who was authorized to approve commitments under the contract; his declaration appears to rely entirely or almost entirely on Rojas's representations and behavior, however. *See* Albuquerque Decl. ¶ 7.

[7] Even if TAP proved at this stage that it was entitled to summary judgment, there would be a genuine dispute as to how much of the additional work Rojas approved. *See* Def. Opp. Ex. 1 (email from IAG personnel indicating that he had "seen several e-mails where [TAP] request[s] approval for an over and above item or material which get[s] rejected by Juan [Rojas] or myself and the TAP personnel's response is that it is a valid charge and no further discussion takes place").

the authority to modify the contract and whether TAP knew of limitations on Rojas's authority as IAG's agent. *See* Luna Dep. at 132.

Finally, TAP argues that IAG accepted TAP's performance by accepting the aircraft, and therefore accepted all of the additional work that TAP had performed. In some contexts accepting non-conforming work can waive a party's objections to that work. *See, e.g., B. Reitman Blacktop, Inc. v. Missirlian*, 52 A.D.3d 752, 753-54 (2d Dep't 2008). The cases cited by TAP rely on the absence of "evidence of objection to particular invoices or the overall amount billed." *RPI Prof'l Alternatives, Inc. v. Citigroup Global Mkts. Inc.*, 61 A.D.3d 618, 619 (1st Dep't 2009); *see also Penava Mech. Corp. v. Afgo Mech. Servs., Inc.*, 71 A.D.3d 493, 494 (1st Dep't 2010) ("R&R's representatives testified . . . that R&R directed Absolute to work overtime . . . R&R's project manager also testified that during this time R&R instructed Absolute not to bother with the 'tickets' that were usually prepared by Absolute for such extra work . . . but to just get the work done."). In this case, there is evidence that at least some of the over and above work that TAP performed was "rejected by Juan [Rojas] or [Michael Mendez]." Def. Opp. Ex. 1. Accordingly, summary judgment is inappropriate.[8]

## II. TAP Is Entitled to Summary Judgment as to IAG's Claims for Replevin and Conversion

The parties cross-move for summary judgment as to IAG's claims for replevin and conversion.[9] These claims are the paradigmatic claims ripe for disposition on summary

---

[8] Insofar as TAP intends to argue that IAG's acceptance of the aircraft, while stating objections to unspecified portions of the additional work, constituted a waiver of its objections, that argument is unpersuasive. Acceptance of non-conforming goods or services might waive an objection in some cases, but IAG was entitled to accept the return of its aircraft and did not have to forfeit its objections to the work that TAP had performed on the aircraft merely to recover what was rightfully IAG's.

[9] The Court assumes that IAG has moved as to both of its counter-claims, although its brief does not clarify the scope of its motion.

judgment, as the material facts are not in dispute. Essentially, TAP removed parts from IAG's aircraft[10] during its repair and has not returned them to IAG. Pl. 56.1 Opp. ¶¶ 4, 6-7.

On October 9, 2012, Rojas emailed TAP the following:

> Maciel:
> Please find attached List of Parts sent from IAG MIA[mi]. We need [to] confirm if the replaced parts are in [sic] your list.
> Please all parts must be send [sic] to IAG.

Def. 56.1 Ex. E at 2-3. The following day, TAP responded:

> Dear Mr. Juan,
> Please see attached the list sent by you. The items in green are items those [sic] are in my list.
> Please, see to the [sic] my list with all your NOK materials. In pink are materials not included in your list.
> Please, I need [to] know urgently the ad[d]ress to send these materials.

*Id.* at 1-2 (capital letters omitted). IAG did not respond to TAP's email. Def. 56.1 Opp. ¶ 47.

One month later, TAP again emailed IAG:

> Dear Mt. [sic] Juan,
> Please, I need urgently your definition about the material reaming [sic] from N61GC.
> Please let me now the address that I can send them [sic].

Pl. 56.1 Ex. 5. IAG again did not respond to this email. Def. 56.1 Opp. ¶ 49. Although TAP has reiterated its offer to return the parts, IAG has not provided a shipping address and has not, since its initial request for the parts, communicated any desire to receive the parts. *Id.* ¶ 53.

### A. Conversion

Conversion is typically "viewed as 'the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" *Thyroff v. Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283, 288-89 (2007) (quoting *State of N.Y. v. Seventh*

---

[10] The Court is unmoved by TAP's arguments that IAG Ventures, rather than IAG, holds title of the aircraft.

*Regiment Fund*, 98 N.Y.2d 249, 259 (2002));[11] *see also Simpson & Simpson, PLLC v. Lippes Mathias Wexler Friedman LLP*, 130 A.D.3d 1543, 14 N.Y.S.3d 258, 261 (4th Dep't 2015) (same). "The tort of conversion is established when one who owns and has a right to possession of personal property proves that the property is in the unauthorized possession of another who has acted to exclude the rights of the owner." *Republic of Haiti v. Duvalier*, 211 A.D.2d 379, 384 (1st Dep't 1995). "[W]here possession of property is initially lawful, conversion occurs when there is a refusal to return the property upon demand." *Salatino v. Salatino*, 64 A.D.3d 923, 925 (3d Dep't 2009).

To prevail, IAG would need to establish that TAP "'exercised an unauthorized dominion over the [aircraft parts] to the exclusion of [IAG's] rights.'" *Mackey Reed Electric, Inc. v. Morrone & Assocs., P.C.*, 125 A.D.3d 822, 824 (2d Dep't 2015) (quoting *Matter of Channel Marine Sales, Inc. v. City of N.Y.*, 75 A.D.3d 600, 601 (2d Dep't 2010)). But IAG cannot establish that – it can only establish that TAP provided free storage, for three years, of $376,000 worth of equipment that IAG said it wanted to be returned but failed to provide an address to which the equipment should be sent.

IAG contends that Rojas's difficult-to-decipher email to TAP constituted a "demand" that TAP return the parts, therefore ending TAP's lawful possession of the parts. In some circumstances, IAG's email – including that request that "all parts must be sen[t] to IAG" – would constitute a sufficient demand to terminate TAP's right to possess the parts. But the email was met with a quick response: the next day, TAP offered to send the parts back and asked for the address to which it should send the parts. TAP did not refuse to return the parts, *Abrams v.*

---

[11] The parties both "'assume that New York law controls, and such implied consent is sufficient to establish choice of law.'" *Chau v. Lewis*, 771 F.3d 118, 126 (2d Cir. 2014) (quoting *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (alteration omitted)).

*Pecile*, 115 A.D.3d 565, 566 (1st Dep't 2014); present a "claim of right" defense, *Simpson & Simpson*, 130 A.D.3d at ---, 14 N.Y.S.3d at 261; or deny possession of the converted property – it sought to return the property and asked for an address to which the parts could be sent.  If IAG had responded, and TAP had not sent the parts, IAG might have a case for conversion, but because IAG failed to respond to multiple requests regarding the logistics of the return, its case fails.

      IAG argues that TAP's request that IAG provide a shipment address was not a genuine inquiry, because Rojas's email signature contained IAG's headquarters' address.  *See, e.g.*, Pl. 56.1 Ex. 5 at 6-7 (listing IAG's address as "6929 N.W.46 [sic] Street, Miami, FL 33166").  It was, however, reasonable for TAP to expect that IAG might not wish for nearly $400,000 of aircraft equipment to be shipped to its corporate headquarters.  IAG has not proffered a scintilla of evidence that suggests that TAP's request for a mailing address was disingenuous, and IAG's argument otherwise is unavailing.

      IAG's final argument is that making a more formal demand for the return of the parts would have been futile.  Admittedly, "a demand is not required if . . . making the demand would [] be futile."  *Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 452 (S.D.N.Y. 2014) (adopting Report & Recommendation).  That situation arises, for example, "when the defendant is a thief," *Seventh Regiment*, 98 N.Y.2d at 260, or when "the property has [been] transferred or destroyed," *Chen*, 8 F. Supp. 3d at 452.  This exception is wholly inapplicable to this case.

      There is no basis from which the Court could conceivably conclude that any "demand" that included the address to which TAP could send the parts would have been futile.  TAP offered to return the parts and sent emails that it described as "urgent" in an attempt to ascertain the address to which the parts should be shipped.  Pl. 56.1 Ex. 5.  IAG asks the Court to assume that if IAG had responded to that email with the appropriate address, TAP would not have

followed through and shipped the parts. That is essentially asking the Court to assume that TAP would have committed the tort of conversion. Making a demand but failing to respond to reasonable inquiries with regard to the demand is insufficient to support a claim of conversion. *Green Complex, Inc. v. Smith*, 107 A.D.3d 846, 849 (2d Dep't 2013) (citing *Trans-World Trading, Ltd. v. N. Shore Univ. Hosp. at Plainview*, 64 A.D.3d 698, 700 (2d Dep't 2009)). Accordingly, no reasonable factfinder could conclude that TAP has "converted" IAG's parts. IAG's motion is denied, and TAP's cross-motion to dismiss IAG's claim is granted.

### B. Replevin

"[R]eplevin is a remedy employed to recover [] specific, identifiable item[s] of personal property." *Heckl v. Walsh*, 122 A.D.3d 1252, 1254 (4th Dep't 2014). "'A cause of action sounding in replevin must establish that the defendant is in possession of certain property of which the plaintiff claims to have a superior right.'" *SE Fin., LLC v. Broadway Towing, Inc.*, 117 A.D.3d 715, 715 (2d Dep't 2014) (quoting *Nissan Motor Acceptance Corp. v. Scialpi*, 94 A.D.3d 1067, 1068 (2d Dep't 2012)). A replevin claim against a good-faith possessor "accrues when the true owner makes demand for return of the chattel and the person in possession of the chattel refuses to return it." *Solomon R. Guggenheim Found. v. Lubbell*, 77 N.Y.2d 311, 317-18 (1991) (citing *Goodwin v. Wertheimer*, 99 N.Y. 149, 153 (1885)); *see generally Intelligen Power Sys., LLC v. dVentus Techs. LLC*, No. 14-CV-7392(PAE), 2015 WL 3490256, at *8 (S.D.N.Y. June 2, 2015); *Matter of Peters v. Sotheby's Inc.*, 34 A.D.3d 29, 34 (1st Dep't 2006).

IAG's replevin claim suffers from the same defects as beset its conversion claim, namely the lack of a "demand," in light of the full context of the communications between the parties. More basically, the fundamental difficulty with IAG's claim is that IAG does not actually want the aircraft parts returned. *See* Def. Reply at 3 ("TAP['s] representation that it is now willing to return the Parts carries no import."); Def. 56.1 Opp. ¶ 53 (admitting that "TAP does not want the

Aircraft Parts, and stands by ready, willing, and able to return the Aircraft Parts to IAG on request," but asserting that the parts have lost their value during the time that TAP retained them). Indeed, that has been the primary obstacle to TAP's returning the parts to their lawful consignee. IAG cannot frustrate TAP's attempts to return the parts and then sue TAP for replevin based on TAP's failure to return the parts. Accordingly, TAP's motion for summary judgment is granted as to IAG's claim for replevin.[12]

## CONCLUSION

For the foregoing reasons, TAP's motion for summary judgment is GRANTED IN PART and DENIED IN PART, and IAG's motion for summary judgment is DENIED. The parties are directed to appear for a status conference on September 25, 2015, at 10:00 a.m., in Courtroom 443 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, NY 10007. The Clerk of the Court is respectfully directed to terminate docket entries 36 and 41.

**SO ORDERED.**

**Date: September 1, 2015**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**

---

[12] Nothing in this Opinion alters the fact that IAG Venture has lawful title to the parts; if IAG or IAG Ventures provides a shipping address, TAP would be lawfully obligated to ship the parts to their lawful owner.